

**FILED**

**February 14, 2018**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:38 A.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Sally A. Lurz | ) Docket No.  2015-02-0462 |
| | ) |
| v. | ) |
| | ) State File No.  62185-2015 |
| International Paper Company, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Brian K. Addington, Judge | ) |

---

### Affirmed and Certified as Final – Filed February 14, 2018

The employee, a machine operator, reported a fall while working on a production line, resulting in pain and other symptoms in her right shoulder and right knee.  The employer initially provided a panel of physicians, but later denied the claim, relying on video evidence from security cameras inside the facility suggesting that the employee was "guarding" her right upper extremity prior to the alleged work accident and, therefore, must have injured her shoulder outside of work.  Following a review of the video evidence, the authorized treating physician acknowledged that it "raised questions about the causality of her injury," but, despite these misgivings, he opined that the work accident was, more likely than not, primarily responsible for the shoulder injury and the need for medical treatment.  Following a compensation hearing, the trial court determined the employee's claim was compensable and awarded temporary disability benefits, permanent disability benefits, and medical benefits.  The employer has appealed.  We affirm the decision of the trial court and certify the order as final.

Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge David F. Hensley joined.

Mary C. DeCamp, Chattanooga, Tennessee, and J. Matt Drake, Knoxville, Tennessee, for the employer-appellant, International Paper Company

Jeffrey C. Taylor, Morristown, Tennessee, for the employee-appellee, Sally A. Lurz

**Factual and Procedural Background**

Sally A. Lurz ("Employee") worked for International Paper Company ("Employer") at its manufacturing facility in Hamblen County, Tennessee. On July 30, 2015, Employee was working on a machine called a Jumbo Folder Gluer, which forms cardboard boxes. As she was attempting to free a unit that had become stuck on the conveyor line, she fell forward into the box, reportedly striking her right shoulder on the box and her right knee on the rollers. The incident was unwitnessed. Employee continued working for another thirty minutes until a scheduled break. At that time, she informed a co-worker what had happened. She then reported the incident to a supervisor, Joey Bolinger, and a manager, David Weiss.

After Employee reported the incident, Employer provided a panel of physicians, from which Employee selected Dr. Shannon Hancock. Dr. Hancock examined Employee, ordered x-rays, and referred her to an orthopedic specialist. Thereafter, Employee selected Dr. Brian Holloway from a panel of orthopedic physicians. Upon review of an MRI, Dr. Holloway diagnosed a full thickness tear in the right rotator cuff and recommended surgery. In a September 9, 2015 report, Dr. Holloway opined that "there is a greater than 50% chance this was related to that injury with that fall. Certainly it fits her diagnosis, fits her findings on the MRI[,] and fits her clinical and diagnostic exam."

Thereafter, Employer provided Dr. Holloway with excerpts from security camera footage taken near the time clock on the day prior to, as well as the morning of, the alleged accident. Dr. Holloway noted that the footage taken on July 29 showed Employee using both arms, swinging her right arm, using her right arm to open the door, and using her right arm at the time clock. However, on the morning of July 30, prior to the alleged accident, the video suggested she was protecting her right arm and not using it as she had the previous day. In a November 4, 2015 letter, Dr. Holloway commented as follows:

> [I]t looks like she may have had an injury to that right arm although you cannot say [with] any [certainty] when actually the injury occurred but she is certainly holding her right arm in a more protected position, using her left arm to perform all tasks[,] and she is not swinging that right arm. . . . [C]ertainly the tape does show that potentially she could have injured it outside work since she does look like she is protecting the arm at the time that she checks into work that day. . . . At this point, certainly that does raise questions about the causality of her injury.

In his letter, Dr. Holloway reiterated that Employee "does absolutely have a tear in her rotator cuff" and "[i]t looks like it is probably secondary to an injury or a fall." He then indicated his intent to address these issues with Employee.

2

As a result of Dr. Holloway's November 4 letter, Employer's insurer issued a letter to Dr. Holloway's office on November 20, 2015, declining to authorize any further medical treatment for Employee. Nevertheless, Employee underwent surgery to repair her right rotator cuff on December 22, 2015.

In a March 11, 2016 report, Dr. Holloway noted that Employee had done "remarkably well" following the surgery, had no complaints of pain, and wanted to return to work. Dr. Holloway recommended a strengthening program and released Employee to return to work with restrictions for two weeks. He placed her at maximum medical improvement as of that date.

In response to a letter from Employee's attorney dated August 31, 2016, Dr. Holloway indicated that, in his opinion, Employee's rotator cuff tear was "more likely than not" the result of her alleged July 30, 2015 work accident. On July 5, 2017, Dr. Holloway completed a Standard Form Medical Report (Form C-32), on which he identified Employee's "fall unjamming conveyor belt" as the "specific incident . . . that brought about the injury." He further indicated that this incident caused the need for medical treatment and that her employment activity was "more likely than not primarily responsible for the injury or primarily responsible for the need for treatment." He assigned a permanent medical impairment rating of 7% to the body as a whole.

Employer took Dr. Holloway's deposition to clarify the perceived inconsistencies regarding his various causation statements. In response to questioning regarding his causation opinion in light of the additional videos he reviewed during the deposition, Dr. Holloway responded as follows:

> [W]ell, all I have to go by is the history, you know, and then, of course, the tapes throw some doubt in there. But then that's why this is one of the more difficult cases where you have a history, everything fits the history, everything the patient says fits her injury and her care, but then you have some doubt because . . . that one tape shows some doubt because she's using her other arm in that one instance. So that's why there is doubt. But I guess all I can do as a physician is do the best I can and *I think it's, at least within a reasonable degree of medical certainty, it seemed like it happened with this fall at work*. (Emphasis added.)

On cross-examination, the following colloquy occurred:

> Q.     And as we sit here today, at no time has [Employee] or the insurance company for [Employer] or [Employer] ever provided you with any history of any other acute injury or cause for this right shoulder other than the work-related injury she reported to you, is that right?

3

*A.*    Yeah. I don't have any, any other known injury, no.

*Q.*    And when you assess the cause of a patient [sic], you say you rely upon their history?

*A.*    Uh-huh.

*Q.*    Did [Employee] ever give you any indication that she was anything other than an honest patient?

*A.*    I mean, that's why I confronted her with the tape, you know, because the tape . . . does raise some questions . . . . So that's why I confronted her directly and she told me directly that she, that she didn't have any other injury. But, of course, I'm relying on her to tell me that, so . . . [.]

Thereafter, Dr. Holloway was asked to confirm information reflected on the Form C-32 regarding the cause of Employee's shoulder injury:

*Q.*    And looking over on the second page, under the [c]ausation section, you reviewed that section and completed it, is that right?

*A.*    Yes.

*Q.*    And it asked you in this context, "more likely than not" and "primarily" both carry the meaning of greater than 50 percent, is that right?

*A.*    That's correct.

*Q.*    And the question was what was the injury and tell us what your answer is.

*A.*    I thought it was trying to unjam the conveyor belt and it gave way and she fell.

. . . .

*Q.*    Okay. Doctor, even though you have doubt, there's some doubt that you mentioned about this, you don't, you can't say . . . with any reasonable degree of medical certainty, that [Employee] had a shoulder injury prior to this fall, can you?

4

*A.*     I can't . . . for sure.

During the compensation hearing, Employee was shown the videos and questioned extensively about them. She denied there was any particular reason for using her right arm to perform certain tasks on July 29 but using her left arm to perform similar tasks the morning of July 30. She denied she was "guarding" or "protecting" her right arm the morning of July 30. She denied any injury to her right shoulder prior to the alleged work accident. She testified she worked for over five hours the morning of July 30 prior to the accident and had no difficulty performing her work duties. Other than inferences drawn from the videos, Employer offered no evidence to contradict this testimony.

Following trial, the court issued a compensation order finding that Employee was credible in her testimony, that she suffered a compensable injury, and that she was entitled to both disability and medical benefits. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

Employer raises four issues on appeal, three of which can be combined to challenge the trial court's determination that Employee satisfied her burden of proving by a preponderance of the evidence her alleged work injury was the primary cause of her injury. The other issue concerns whether the trial court erred in not granting Employer's "motion for directed verdict" at the close of Employee's case-in-chief.

*Motion for Directed Verdict*

Employer argues that the trial court erred in denying its "motion for directed verdict" following the close of Employee's case-in-chief. Specifically, it asserts the trial court based its decision to deny the motion, in part, "on the grounds that the scheduling order entered by the Court overruled Rule 50 of the Tennessee Rules of Civil Procedure."

Following the close of Employee's case-in-chief, Employer moved the trial court for a "directed verdict under Rule 50." After hearing Employer's initial argument, Employee's response, and Employer's rebuttal, the trial court responded, "[a]t this time I'm ruling on the motion. . . . [T]he court has to look at the thing as a whole to determine whether causation has been proven to the satisfaction of the court. So at this time I'm denying the motion."

The trial court then added:

> Also, . . . our initial hearing order or scheduling order, . . . it kind of bucks at normal rules like a request for a directed verdict because you typically have to wait until the proof has been put on before you ask for something like that, but also our scheduling order, though, says motions end at a certain date, okay? And we're past that . . . . So I'm taking that into consideration too.

Employer responded by noting that a motion for directed verdict cannot be made until the close of a case-in-chief pursuant to Rule 50 of the Tennessee Rules of Civil Procedure, but the trial court reiterated it was denying the motion.

The applicability of Rule 50 and motions for directed verdict in a non-jury setting has been the subject of some confusion. The Tennessee Supreme Court addressed this issue in *Building Materials Corp. v. Britt*, 211 S.W.3d 706 (Tenn. 2007), where it explained that, in a non-jury setting, such a motion is not to be treated as a motion for directed verdict pursuant to Rule 50, but is instead to be considered a motion for involuntary dismissal under Rule 41.02.[1] In that case, the employer moved for a directed verdict at the close of the employee's proof. *Id.* at 710. The trial court treated the motion as one for involuntary dismissal and granted the motion. *Id.* The Special Workers' Compensation Appeals Panel reversed the trial court on a substantive issue and remanded the case, and the Supreme Court granted review. *Id.*

---

[1] Tenn. R. Civ. P. 41.02(2) states, "After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. . . . The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

In affirming the decision of the Special Workers' Compensation Appeals Panel, the Supreme Court discussed the standard to be applied in these circumstances:

> When a motion to dismiss is made at the close of a plaintiff's proof in a non-jury case, the trial court must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all the evidence has been presented. If a plaintiff's case has not been established by a preponderance of the evidence, then the case should be dismissed if the plaintiff has shown no right to relief on the facts found and the applicable law. The standard of review of a trial court's decision to grant a Rule 41.02 involuntary dismissal is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure.

*Id.* at 711 (citations omitted).[2]

In the present case, we agree that Employer's motion, properly characterized as a motion for involuntary dismissal under Rule 41.02 rather than a motion for directed verdict under Rule 50, does not fall within the scope of a trial court's scheduling order. Such a motion, by definition, cannot be filed until the close of an employee's case-in-chief and, therefore, making such a motion during a trial cannot violate a trial court's deadlines for the filing of pre-trial motions.

However, upon close review of the transcript of the compensation hearing, we conclude the trial court properly ruled on the merits of Employer's motion for dismissal *before* commenting on the potential lateness of the motion. Thus, to the extent the trial court erred in considering the lateness of the motion as a basis for denying it, such error was harmless.

*Medical Causation*

It is well-settled that the employee in a workers' compensation claim has the burden of proof on all essential elements of the claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug.

---

[2] Rule 13(d) of the Tennessee Rules of Appellate Procedure states, "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Although we are not governed by the Rules of Appellate Procedure, *see Yarbrough v. Protective Services Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *12 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016), this standard is consistent with the standard we apply, as mandated by statute. *See* Tenn. Code Ann. § 50-6-239(c)(7) ("There shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise.").

18, 2015).  At trial, the employee must prove eligibility for workers' compensation benefits by a preponderance of the evidence.  Tenn. Code Ann. § 50-6-239(c)(6).  To satisfy this burden, the worker must prove, more likely than not, that the employment contributed more than 50% in causing the disablement or need for medical treatment, considering all causes.  Tenn. Code Ann. § 50-6-102(14)(C)-(D) (2017).

Employer argues that because the authorized physician expressed some doubt as to the cause of Employee's injuries, Employee failed to meet her burden of proof at trial. Employer also characterizes the video footage it offered into evidence as showing Employee's "guarded, protective behavior" with respect to her right upper extremity prior to the alleged work accident.  Finally, Employer claims that, once Dr. Holloway had reviewed all of the video evidence during his deposition, he only opined that the work accident *could have been* the cause of her injury, which is insufficient to meet Employee's burden of proof on the issue of medical causation.

Employee disputed Employer's characterization of the video footage and testified that she was not "guarding" her right upper extremity prior to the work accident.  She further stated, without contradiction, that she was able to complete her job tasks without difficulty on the date of the accident for approximately five hours prior to the fall.

Significantly, even after reviewing the initial video footage and expressing some doubt as to causation, Dr. Holloway completed a Standard Form Medical Report (Form C-32) attributing Employee's injury to the work accident.  In his deposition, Dr. Holloway reiterated these opinions.  He acknowledged having some doubt as to causation, but after reviewing additional video excerpts, he opined that the cause of the injury was "trying to unjam the conveyor belt."  When asked about Employee's prior work activities on the day of the accident, the following colloquy occurred:

> Q.  [Employer is] taking the position that she hurt herself before this injury where she claimed.  Do you have any evidence or has the employer provided you with any evidence that she wasn't able to do the work up to this . . . fall?
>
> A.  They didn't.
>
> Q.  Okay.  Doctor, that would be very compelling evidence that she had a prior injury, wouldn't it?
>
> A.  And I was hoping – when I told them that, I was hoping that they would have some information on that.
>
> Q.  Okay.

8

*A.*      If she had been at work all day . . . you would have thought somebody would have noticed that she wasn't using one arm or the other.

*Q.*      And you haven't been –

*A.*      And I haven't been, not that I know of, been provided with anything that says she was or her supervisor or anyone around her. You would think that she would have had trouble if she had been there.

. . . .

*Q.*      Okay. And so the only competent producing cause that you're aware of as we sit here today for this right rotator cuff tear would be the fall at work that she reported?

*A.*      That's what I've been going on from the beginning, yes.

The fallacy in Employer's argument is that it asks us to reverse the trial court's determination based on *Employer's* medical interpretation of the video footage. It urges us to conclude, independent of any expert medical testimony, that Employee's actions as depicted in the video footage show that her shoulder was already injured when she arrived at work on July 30, 2015. Employer offers no evidence of a prior injury. Moreover, it offers no independent medical proof to contradict Dr. Holloway's opinions, but relies instead on Dr. Holloway's admission that he had "some doubts" as to causation after reviewing the video footage. We have previously noted that judges are not well-suited to make independent medical determinations without expert medical testimony supporting such a determination. *See Scott*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8. Likewise, parties and their lawyers cannot rely solely on their own medical interpretations of the evidence to successfully support their arguments.

Moreover, as reflected in section 50-6-102(14), a medical expert's opinion that the work accident was "more likely than not" at least 50% of the cause of the injury is sufficient to satisfy an employee's burden of proof. The law does not require absolute certainty on the part of the medical expert and allows for the existence of some doubt, as was reflected in this case. Although Employer showed Dr. Holloway videos that it contends contradict Employee's account of how she was injured, Dr. Holloway continued to reiterate his opinion that, based on the information he had been provided and his conversations with Employee about the contents of the videos, the injury was primarily caused by the employment. Employer presented no countervailing medical proof and, thus, we conclude Employer has not rebutted the presumption of correctness to which Dr. Holloway's opinions are entitled.

9

Finally, the law is clear that "[w]hen the trial court has heard in-court testimony, considerable deference must be afforded in reviewing the trial court's findings of credibility and assessment of the weight to be given to that testimony." *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008); *see also Love v. Delta Faucet Co.*, No. 2015-07-0195, 2016 TN Wrk. Comp. App. Bd. LEXIS 45, at *17 (Tenn. Workers' Comp. App. Bd. Sept. 19, 2016). The trial court found Employee to be credible, and the evidence does not preponderate otherwise.

In short, although Employer presented evidence to cast some doubt on Employee's claim, Dr. Holloway's testimony ultimately satisfied Employee's burden of proof on the causation issue. Thus, we conclude the preponderance of the evidence supports the trial court's determination on this issue.

## Conclusion

We affirm the determination of the trial court in all respects and certify the compensation order as final.

FILED

**February 14, 2018**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 10:38 A.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sally A. Lurz | ) | Docket No. 2015-02-0462 |
| | ) | |
| v. | ) | State File No. 62185-2015 |
| | ) | |
| International Paper Company, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 14th day of February, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Jeffrey C. Taylor | | | | | X | jeff@taylorlawfirmtn.com |
| J. Matt Drake | | | | | X | matt.drake@leitnerfirm.com |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |



Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov